actual cost at those dates is more conclusive as to the value on March 1, 1913, than the opinion evidence advanced by the taxpayer in support of a greater value.

The real appreciation in the value of the real estate, which was considered by the decedent in determining his sales price of $1,390 a share, occurred subsequent to 1913, and accompanied the general trend of higher values which took place from 1914 on.

The Commissioner allowed a good will valuation of $73,530.20 for the entire capital stock outstanding on March 1, 1913, which should be increased to $80,802.41, as set forth in the findings of fact, and the deficiency should be computed on the facts therein found.

---

## APPEAL OF DAVID FELDMAN.

Docket No. 5604.   Submitted November 17, 1925.   Decided January 26, 1926.

*David T. Wiener, Esq.*, for the taxpayer.
*W. F. Gibbs, Esq.*, for the Commissioner.

Before LITTLETON, SMITH and TRUSSELL.

This is an appeal from the determination of a deficiency in income tax for the calendar year 1923 in the amount of $443.96, arising from the following:

(1) Inclusion in gross income of a second-trust note at its face value of $7,500.

(2) Failure to allow a deduction of $500 from the sales price of the property as commission paid thereon.

(3) Increase of the taxpayer's income on account of groceries for personal use from $500 to $1,000.

### FINDINGS OF FACT.

Taxpayer is a resident of the District of Columbia, engaged in selling groceries at retail. In 1923 he acquired, through the sale of a brick store and residence building at 500 Twelfth Street N. E., Washington, D. C., a second-trust note of the face value of $7,500 as part of the sales price thereof. In computing the profit upon the sale the Commissioner included the second-trust note at its face value of $7,500. The fair market value of the second-trust note at the time received in 1923 was 70 per cent of its face value, or $5,250. The taxpayer paid a commission of $500 upon the sale of the property.

During 1923 taxpayer provided his family, consisting of himself, his wife, and five children, the elder being 11 years of age, with such vegetables and groceries as were required from the store operated by him, without keeping a separate account thereof. In his

return for the taxable year he included the amount of $500 as income on account of groceries for personal use, which amount the Commissioner increased to $1,000. In observance of religious laws, taxpayer ate no meat or bread such as he carried in his store. Income to the taxpayer on account of groceries for personal use from his store amounted to $500 during the taxable year.

### DECISION.

The deficiency should be computed in accordance with the foregoing findings of fact. Final determination will be settled on 10 days' notice, under Rule 50.

---

## Appeal of WHOLESALE COAL CO.

Docket No. 4515. Submitted November 17, 1925. Decided January 26, 1926.

*Frederick C. Rohwerder, C. P. A.,* for the taxpayer.
*John W. Fisher, Esq.,* for the Commissioner.

### Before Phillips and Trammell.

Taxpayer appeals from the determination of a deficiency of $9,884.19, income and profits tax for 1920, and alleges error on the part of the Commissioner in disallowing a deduction of $20,774.51, claimed to be a debt due taxpayer from the Knickerbocker Corporation ascertained to have been worthless and charged off during the taxable year.

#### FINDINGS OF FACT.

On April 29, 1920, taxpayer entered into an agreement with the Knickerbocker Corporation to deliver to it 50,000 tons of coal, at $4.75 per ton, f. o. b. cars at mines, such coal to be shipped at the rate of 5,000 tons per month commencing May 1, 1920. The contract provided for immediate payment upon presentation of bills of lading to Hennevig & Co., bankers, at New York City. The credit of the Knickerbocker Corporation was not good and at the time the contract was entered into a confirmed credit was established by the Knickerbocker Corporation with Hennevig & Co. for the purpose of making payment for the coal. In October, taxpayer's officers heard rumors affecting the credit of Hennevig & Co. and shipments were curtailed. Taxpayer was assured by officers of Hennevig & Co. that the credit of that corporation was not affected, and in the latter part of October payment for coal shipped to that date was made in full. In November a large number of small shipments was made. Taxpayer found itself unable to collect promptly for these shipments, and, in the latter part of November, Hennevig &